IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | Docket No. 13-328-1 |
| LOUAY SHAMAN | : | |

## SENTENCING MEMORANDUM OF DEFENDANT LOUAY SHAMAN

Defendant, LOUAY SHAMAN, by and through his counsel JUSTIN C. CAPEK, ESQ. respectfully submits the following Memorandum to assist the Court in fashioning a just and fair punishment which is not greater than necessary to accomplish the fundamental objectives of sentencing as articulated in 18 U.S.C. § 3553(a).

### I. INTRODUCTION

Mr. Louay Shaman will appear before this Court to be sentenced for a Class C violation of the terms and conditions of his Supervised Release with regard to one count Using a Facility of Interstate to knowingly persuade/induce/entice/coerce a minor younger than 18 to engage in sexual activity in violation of 18 U.S.C. §2422(b).

### II. PROCEDURAL HISTORY

**Case #5:13-CR-00328-JS-1**

On June 20, 2013, the U.S. Attorney's Office for the EDPA filed a two-count Indictment charging Mr. Shaman with Using a Facility of Interstate to knowingly persuade/induce/entice/coerce a minor younger than 18 to engage in sexual activity in violation of 18 U.S.C. §2422(b) and one count of Knowingly Transporting a minor under age 18 in interstate commerce with the intent that the individual engage in sexual activity in violation of 18 U.S.C.

§2423(a) respectively. On January 6, 2014, Mr. Shaman appeared before the Honorable James Knoll Gardner and pled guilty to Count 1 of the Indictment. On May 8, 2015, the Court imposed a sentence of ninety-six (96) months imprisonment, followed by one hundred and twenty (120) months of supervised release. On July 21, 2023, following a violation of the terms and conditions of his supervised release, Mr. Shaman stipulated to probable cause for the instant Class C violation as well as detention. Mr. Shaman has remained in Federal Custody pending a final hearing regarding the instant VOSR.

## VIOLATION CONDUCT – CLASS C

On June 26, 2023, a violation report was authored by Senior United States Probation Officer Robert Scales III outlining the violation conduct. More specifically, Mr. Shaman is alleged to have had regular contact with children under the age of eighteen (18), failing to disclose an ongoing sexual relationship to his treatment providers, failing to disclose this relationship to the Probation Office, and regularly using marijuana.

### III. FACTUAL HISTORY OF CLASS C VIOLATION

On or about February to March of 2023, Mr. Shaman began a relationship with Ms. Bailey Shields. Ms. Shields is the sole parent of two sons, ages six (6) and four (4) respectively. Mr. Shaman began spending time with Ms. Shields and her two sons, including recreational activities as a group. There are no allegations of harm/danger/abuse by Ms. Shields nor her children against Mr. Shaman, and all accounts indicate this contact was permitted/encouraged by Ms. Shields. Nonetheless, it is beyond cavil that Mr. Shaman's supervision *requires* him to notify the Probation Office of *any* contact with minor children, even if permissible by the parent. Quite simply, Mr. Shaman failed to apprise this relationship with Ms. Bailey and her children to both the Probation Office and his treatment facilitators as required by this Court's sentence, however, for the reasons

outlined herein, said omissive conduct was not tempered by a malicious intent. Accordingly, Mr. Shaman acknowledges his prohibitive conduct and understands that the rules that are in place require his full compliance and leave no room for his own discretion.

## IV. SENTENCING CONSIDERATIONS

As the Supreme Court has consistently asserted, "'[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Gall v. United States*, 128 S.Ct. 586, 598 (2007) quoting *Koon v. United States*, 518 U.S. 81, 113 (1996). This enduring principle was given new life in *United States v. Booker*, 543 U.S. 220, 244 (2005), where the United States Supreme Court held that those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory (18 U.S.C. § 3553(b)(1)), or which rely upon the Guideline's mandatory nature (18 U.S.C. § 3742(e)), to be incompatible with the Sixth Amendment. Accordingly, the Court severed and excised those provisions, thereby rendering the Guidelines "effectively advisory." *Id.* at 245.

The 3rd Circuit has developed a three-step approach to sentencing that district courts must follow in the wake of *Booker*:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculation under the Guidelines.

3

*United States v. Gunter*, 462 F.3d 237, 247 (3rd Cir. 2006) (quotation marks, brackets, and citations omitted), citing *United State v. King*, 454 F.3d 187, 194, 96 (3rd Cir. 2006); *United States v. Cooper*, 437 F.3d 324, 329-30 (3rd Cir. 2006). Thus, steps one and two mirror the pre- *Booker* scheme, in which any sentence outside the applicable sentencing range must be imposed pursuant to the departure framework provided by the Guidelines.

It is 18 U.S.C. § 3553(a), however, that ultimately governs the imposition of the defendant's sentence, with the Guidelines calculation operating as merely one factor amongst the variety of considerations listed in this statute. *See Booker*, 543 U.S. at 246. As the Supreme Court has emphatically stated, a sentencing judge "may not presume that the Guidelines range is reasonable." *Gall*, 128 S.Ct. at 596-97. Rather, it is the mandate in 18 U.S.C. § 3553(a) that "[t]he court shall impose a sentence sufficient, **but not greater than necessary**, to comply with purposes set forth in paragraph (2) of this subsection," that guides trial courts' sentencing determinations. 18 U.S.C. § 3553(a) (emphasis added). These purposes, as listed in 18 U.S.C. § 3553(a)(2), include the need for the sentences imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed education and vocational training, medical care, or other correctional treatment in the most effective manner.

Also, sentencing courts are directed to consider the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553(a)(1));
>
> (2) the kinds of sentences available; (18 U.S.C. § 3553(a)(3));

(3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (18 U.S.C. § 3553(a)(6)); and

(4) the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7));

As the 3rd Circuit has been adamant in emphasizing, "[t]he record must demonstrate the trial court gave meaningful considerations to the § 3553(a) factors. *Cooper*, 437 F.3d at 329.

In addition to Section 3553, other statutory sections also provide district courts with guidance in sentencing. In particular, in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is **not** an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a) (emphasis added).

## V. APPLICATION OF THE SENTENCING FACTORS

Applying the statutory factors set forth in 18 U.S.C. § 3553(a) to Mr. Shaman's case, counsel requests this Court vary downward from the advisory sentencing guidelines and impose a sentence which does not further incarcerate Mr. Shaman for the reasons set forth below.

### A. The Kinds of Sentences Available – 18 U.S.C. § 3553(a)(3)

The sole question before this Court is whether a period of incarceration is warranted based on Mr. Shaman's Class C Violation. Mr. Shaman has remained incarcerated since the date of his arrest in the instant VOSR matter. Based on the foregoing, Counsel submits that a sentence that does not subject Mr. Shaman to further, additional incarceration is "sufficient but not greater than necessary" to accomplish the goals of sentencing.

### B. History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)

This is Mr. Shaman's first violation for failing to comply with this Court's sentence, and requires Mr. Shaman to incur punishment; however, this Court must also consider Mr. Shaman's personal history and characteristics prior to this violation in fashioning a sentence that is

5

"sufficient, but not greater than necessary." Mr. Shaman offers no excuse for failing to follow the rules/conditions governing his term of supervised release and stands before this Court a remorseful and penitent man.

In that vein, Mr. Shaman is an intelligent person and a capable businessman. He possesses a variety of business skills which afford him the opportunity to lawfully support himself and provide gainful financial support to family, particularly his young daughter. As shown by the exhibits attached hereto (*Index Exhibits 1-3*), Mr. Shaman is the co-owner of L & S Towing and Recovery, a fully licensed business operating in Philadelphia, PA.

While Mr. Shaman has succeeded in his professional endeavors, he has abjectly failed in his personal life. Mr. Shaman is the father of a young daughter, Laila Shaman, whom he shares with his fiancé, Ms. Arianna Delgado. Unbeknownst to Ms. Delgado as well as the United States Probation Office, Mr. Shaman began an intimate relationship with Ms. Bailey Shields in March of 2023. Ms. Shields is a single mother of two (2) young children whose father has been absent during their upbringing. Instead of returning home to his wife and daughter, Mr. Shaman began socializing with Ms. Bailey and her children out of a sincere (but impermissible) desire fulfil a fatherly role in the children's lives, albeit surreptitiously to Ms. Delgado and the Probation Office. Importantly, there is no indication to suggest any of this impermissible contact was unsupervised. Most importantly, there are no allegations of negative/harmful contact with Ms. Shields' children.

Nonetheless, it is beyond cavil that Mr. Shaman was acutely aware of the rules governing his supervised release with regard to intimate relationships/ contact with minor children and chose to disregard them. In that vein, Mr. Shaman has only temporarily failed this Court, his fiancé, and daughter. He understands that while life can only be understood backwards, it must be lived forward.

In a letter submitted on Mr. Shaman's behalf, Ms. Delgado provides insight into Mr. Shaman's commitment to his role as a supportive father and spouse:

> *I have known Louay for three years and in the period of those years we had a beautiful daughter, Laila, who Louay has been a great father towards. He has always been a reliable father and partner who's been coming home to his family at night.*

Moreover, Ms. Delgado shares her frustration, anger, and disappointment with Mr. Shaman's failure to follow the rules of his supervised release, and breaching the foundation of mutual trust as her spouse and father of their child:

> *Until recently around March or April of this year, I had noticed a change that Louay was not coming home earlier as he would normally would. I then discovered that he was going home to another woman who had three kids and had his family at home wondering where he was at. It really hurt me when I found out the truth and I am still very angry with him because he chose to be untrue to me. He betrayed me and broke our trust.*
>
> *Ever since he met this women Bailey Shields there were nothing but more problems and lies. Before all of this, he was providing for and taking care of his family. When his probation officer will do his check-ins, there were no issues with him and everything seemed to be going well. He had truly shown me how hard he was working and started up his towing company with his friend, I never met someone like him with the charisma he showed and always there when he was needed without any questions asked.*
>
> *For a person with such great character and whom has been a supporting spouse and partner, I am still shocked, disappointed and angry at him for his dishonesty. Despite my feelings, I am asking the Court to give him a second chance in proving that he can be better not only for himself, but for his daughter. Having a dad present for your child is important to me because to me because our daughter is our shared world. I truly hope this time away from his daughter and I has been a wake-up call for Louay to realize that he is a father and husband FIRST, and everything he does should reflect that. It makes me physically ill thinking about our daughter's lost time away from her dad and I know he feels the same way, and responsible for the hurt he caused us. As the school season approaches, I am asking the Court to give Louay leniency and the opportunity to be present with our family as our daughter starts the new school year. I can promise the Court that when he is living in our house, he will abide by MY Rules and those he legally has to follow.*

(*See Index Exhibit 4 Attached hereto*).

Clearly, Mr. Shaman is a hardworking father who has all the tools necessary to succeed and maintain a law-abiding life in order to provide for himself and his family. Instead, he

compromised his liberty, integrity, and ability to provide for his family for a trivial, ephemeral relationship void of substance and meaning.

Accordingly, Mr. Shaman can and must present father figure who earns an *honest* living in society, upholds an *honest* relationship with his fiancé, and maintains an *honest* report with the Probation Office. His admission of guilt to this violation in the first step in the right direction. The final step requires Mr. Shaman to commit himself to the meaningful relationships in his life which have invariably fostered a sense of duty as a father and partner. On no uncertain terms, Mr. Shaman can and must do better.

### C. Nature and Circumstances of the Offense – 18 U.S.C. § 3553(a)(1)

Mr. Shaman has violated the terms and conditions of his Supervised Release by failing to follow the strict rules governing his supervision. He pursued a prohibited intimate relationship and chose to hide this relationship and his contact with Ms. Shields' children to the Probation Office. While this contact may have been permissible (and encouraged) by Ms. Shields, Mr. Shaman was acutely aware of the rules prohibiting this contact and chose to ignore them. Mr. Shaman offers no excuse for his violative and morally bereft conduct and stands before this Court a remorseful and penitent man.

### D. Purposes of Sentencing – 18 U.S.C. § 3553(a)(2)

#### 1. Promoting Respect for the Law and Providing Just Punishment for the Offense – 18 U.S.C. § 3553(a)(2)(A)

Respect for the law does not result from imposing unnecessarily harsh sentences, but just ones that accurately reflect the guiding legal principles which have been discussed throughout Mr. Shaman's VOSR Sentencing Memorandum. Further, respect for the law is engendered when a sentence reflects a sincere acceptance of responsibility and a commitment to rehabilitative effort on behalf of a defendant.

### 2. To Afford Adequate Deterrence to Criminal Conduct – 18 U.S.C. § 3553(a)(2)(B)

Adequate deterrence refers to both the effect Mr. Shaman's sentence will have on deterring the crimes and/or supervision violations of others (general deterrence) and on himself (specific deterrence). A sentence reflecting specific deterrence is not at issue. Mr. Shaman has reflected on his past behavior and sincerely regrets his surreptitious conduct which has negatively impacted himself, his child, and his relationship with the Probation Office.

In terms of general deterrence, the goals of sentencing are further engendered by a sentence which incentivizes defendants to strictly comply with the rules governing their supervised release to establish mutual trust with the Probation Office and with the justice system in general.

### 3. Protecting the Public from Further Crimes of the Defendant – 18 U.S.C. § 3553(a)(2)(C)

It is respectfully submitted that Mr. Shaman is not a threat to the public, and only wishes to continue making amends with his child and family. Fortunately, his detention in the instant matter has provided him with the necessary clarity to realize that his supervision rules are mandatory and leave no room for his personal discretion.

### 4. Providing the Defendant with Needed Education and Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner – 18 U.S.C. § 3553(a)(2)(D)

Mr. Shaman would benefit from additional drug counseling as he has admitted to recently using marijuana as a stress coping mechanism. Furthermore, Mr. Shaman should avail himself to family therapy to repair his relationship with Ms. Delgado and his young daughter.

## VI. REQUEST FOR VARIANCE

Based on the foregoing, counsel respectfully implores this Court to take into consideration his background; his gainful work history; his desire to make amends with both his family and the Probation office; and his full, honest acceptance of responsibility, and to impose a sentence of which will not further incarcerate Mr. Shaman. Such a sentence will be "sufficient but not greater than necessary".

Respectfully submitted,

**/s/ JUSTIN C. CAPEK, ESQ.**
Justin C. Capek, Esquire
Attorney for Defendant
Two Penn Center
1500 John F. Kennedy Boulevard
Suite 1300
Philadelphia, PA 19102
Phone: (215) 845-2500

# CERTIFICATE OF SERVICE

JUSTIN C. CAPEK, ESQ. hereby certify that a true and correct copy of the within Sentencing Memorandum has been served electronically upon:

**THE HONORABLE JUAN R. SÁNCHEZ**
Chief Judge
United States Courthouse
601 Market Street
Philadelphia, Pa. 19106

**JEROME MIATICO, ESQUIRE**
Assistant United States Attorney
U.S. Department of Justice
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

**ROBERT SCALES III, SENIOR U.S. PROBATION OFFICER**
U.S. Probation Office
William J. Green Federal Building
600 Arch Street, Suite 2400
Philadelphia, PA 19106

/s/ JUSTIN C. CAPEK, ESQ.
Justin C. Capek, Esquire
Attorney for Defendant
Two Penn Center
1500 John F. Kennedy Boulevard
Suite 1300
Philadelphia, PA 19102
Phone: (215) 845-2500

# VOSR INDEX FOR LOUAY SHAMAN

1. Commercial License for L & S Towing and Recovery

2. PENNDOT Registration for L & S Towing and Recovery

3. City of Philadelphia Business Activity License

4. Letter from Ms. Arianna Delgado



City of Philadelphia
Department of
Licenses & Inspections
P.O. Box 53310
Philadelphia, Pa. 19105

**DISPLAY PROMINENTLY**
If required by law

L & S TOWING
2821 MAGEE ST
PHILADELPHIA PA 19149
USA

3702         Commercial Activity License
Activity License Type: Commercial Activity

| LICENSE CODE | LICENSE NO | COMMERCIAL ACTIVITY LIC. | EXPIRES AT END OF | EFFECTIVE DATE |
|---|---|---|---|---|
| 3702 | 922621 | 922621 | | 5/2/2023 |

## ACTIVITY LICENSE

Interpretation services available | | | | | Services d'interprétation disponibles | | | | Se brindan servicios de interpretación | Có sẵn dịch vụ thông dịch

# CITY OF PHILADELPHIA
## APPLICATION FOR
## PHILADELPHIA BUSINESS TAX ACCOUNT NUMBER
## COMMERCIAL ACTIVITY LICENSE
## WAGE TAX WITHHOLDING ACCOUNT

TST APR 28 2023 #9

READ INSTRUCTIONS ON REVERSE BEFORE COMPLETING THIS FORM
CLEARLY PRINT OR TYPE ALL INFORMATION
You can register online at https://www.ework.phila.gov/revenue

There is no fee for a Commercial Activity License.

**DEPARTMENT USE ONLY**
BIRT # 00-00181850 4
PHILADELPHIA BUSINESS TAX ACCOUNT NUMBER: 260-0143987
PHILADELPHIA COMMERCIAL ACTIVITY LICENSE NUMBER:
REVENUE CODE 3702
NPT 00-00180 2120

1. IF THIS ACCOUNT IS FOR WAGE TAX WITHHOLDING ONLY, CHECK HERE: ☐
2. IF THIS ACCOUNT IS FOR NET PROFITS TAX ONLY, CHECK HERE: ☐

DATE PHILADELPHIA BUSINESS BEGAN: 04-1-2023
2B. ARE YOU CLAIMING "NEW BUSINESS" TAX STATUS UNDER PHILADELPHIA CODE 19-3800? YES ☐ NO ☐
DO YOU NEED PRIOR YEAR TAX FORMS? YES ☐ NO ☐
DATE WAGES FIRST PAID:
TAXABLE MONTHLY PAYROLL: $ 0.00

EMPLOYER IDENTIFICATION NUMBER: 92-3319428
SOCIAL SECURITY NUMBER:
PA STATE SALES and USE TAX NUMBER:

PRIMARY TYPE OF BUSINESS: ☐ CONSTRUCTION ☐ WHOLESALE ☐ RETAIL ☐ MANUFACTURING ☐ SERVICES ☒ OTHER

DESCRIBE EXACT TYPE OF BUSINESS: Towing

ENTITY NAME: L & S Towing & Recovery
8. TRADE NAME (IF APPLICABLE):

BUSINESS ADDRESS: 2550-40 N 2nd st | CITY: Philadelphia | STATE: PA | ZIP: 19133 | ☐ OWN ☒ RENT

MAILING ADDRESS: 2821 Magee Ave | CITY: Philadelphia | STATE: PA | ZIP: 19149

BRANCH OFFICE ADDRESS:

BUSINESS TELEPHONE NUMBER: 267-770-8632
13. HOME TELEPHONE NUMBER:
14. FAX NUMBER:
15. E-MAIL ADDRESS:

TYPE OF ORGANIZATION (CHECK ONE):
A) ☐ SOLE PROPRIETOR
B) ☐ CORPORATION
C) ☐ ESTATE/TRUST
D) ☐ LIMITED LIABILITY COMPANY (LLC) / DISREGARDED ENTITY (LLC) — CORPORATION ☐ PARTNERSHIP ☐ SOLE PROPRIETORSHIP ☐
E) ☒ PARTNERSHIP — GENERAL PARTNERSHIP ☐ LIMITED LIABILITY PARTNERSHIP ☒ LIMITED PARTNERSHIP ☐
F) ☐ JOINT VENTURE
G) ☐ GOVERNMENT
H) ☐ ASSOCIATION
I) ☐ NON-PROFIT UNDER INTERNAL REVENUE CODE §501(C)(3)

WAGE TAX ONLY

| INDIVIDUALS, PARTNERS OR OFFICERS NAMES | 18. HOME ADDRESS | 19. SSN OR FEDERAL EIN |
|---|---|---|
| Louay Shaman | 1910 N Mascher St Phila PA 19122 | 92-3319428 / 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 |
| Thaer Zagzoug | 2821 Magee Ave Phila PA 19149 | 92-3319428 / 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 |

20B. PRIMARY LANGUAGE OF BUSINESS OWNER: ☐ ENGLISH ☐ SPANISH ☐ KOREAN ☐ RUSSIAN ☐ OTHER

VOLUNTARY DISCLOSURE OF RACE AND GENDER INFORMATION
RACE/NATIONAL ORIGIN: ☐ ASIAN, PACIFIC ISLANDER ☐ BLACK ☐ HISPANIC ☐ WHITE ☐ OTHER
SEX: ☐ MALE ☐ FEMALE

I understand that if I knowingly make any false statement(s) herein, I am subject to penalties as prescribed by law.

SIGNATURE: [signed]
PRINT NAME: By Thaer Zagzoug / Louay Sham
PHONE NUMBER: 267-770-8632
DATE: 4-28-23

Mail the completed application to the CITY OF PHILADELPHIA, DEPARTMENT OF REVENUE, P.O. BOX 1600,

|  |  |
|---|---|
| State/Province: | PHILADELPHIA PENNSYLVANIA |
| Postal Code: | 19133 |

Q: Mailing Address

A:
- Country: United States
- Street Address/Route Number Line 1: 2821 MAGEE AVE
- City: PHILADELPHIA
- State/Province: PENNSYLVANIA
- Postal Code: 19149-2529

Q: Principal Place of Business Telephone Number
A: US ( 215 ) 917-9511 Ext:

Q: Principal Place of Business Cell Number
A: US ( 267 ) 770-8632

Q: Employer Identification Number (EIN) or Social Security Number (SSN)
A: EIN : 923319428

Q: Form of Business (Select the business form that applies)
A: Limited Liability Partnerships

Q: LLC/Corporation/LLP (State of Incorporation)
A: PENNSYLVANIA

Q: Ownership and Control
A: Owned/controlled by citizen of U.S.

Q: Name and Titles of the Sole Proprietor, Partners, or Others

A:
- Company Contact: true
- First Name: LOUAY
- Middle Name:
- Last Name: SHAMAN
- Suffix:
- Title: OWNER
- Email: louieshaman37@gmail.com
- Telephone Number: US ( 267 ) 584-0430

- Company Contact: false
- First Name: THAER
- Middle Name: T
- Last Name: ZAQZOUQ
- Suffix:
- Title: OWNER
- Email: tito4844@yahoo.com
- Telephone Number: US ( 215 ) 917-9511

Q: Company Contact Address

A:
- Country: United States
- Street Address/Route Number Line 1: 2821 MAGEE AVE
- City: PHILADELPHIA
- State/Province: PENNSYLVANIA
- Postal Code: 19149-2529

| | |
|---|---|
| City: | PHILADELPHIA |
| State/Province: | PENNSYLVANIA |
| Postal Code: | 19133 |

Q: Mailing Address
A:
| | |
|---|---|
| Country: | United States |
| Street Address/Route Number Line 1: | 2821 MAGEE AVE |
| City: | PHILADELPHIA |
| State/Province: | PENNSYLVANIA |
| Postal Code: | 19149-2529 |

Q: Principal Place of Business Telephone Number
A: US ( 215 ) 917-9511 Ext:

Q: Principal Place of Business Cell Number
A: US ( 267 ) 770-8632

Q: Employer Identification Number (EIN) or Social Security Number (SSN)
A: EIN : 923319428

Q: Form of Business (Select the business form that applies)
A: Limited Liability Partnerships

Q: LLC/Corporation/LLP (State of Incorporation)
A: PENNSYLVANIA

Q: Ownership and Control
A: Owned/controlled by citizen of U.S.

Q: Name and Titles of the Sole Proprietor, Partners, or Others
A:
| | |
|---|---|
| Company Contact: | true |
| First Name: | LOUAY |
| Middle Name: | |
| Last Name: | SHAMAN |
| Suffix: | |
| Title: | OWNER |
| Email: | louieshaman37@gmail.com |
| Telephone Number: | US ( 267 ) 584-0430 |

| | |
|---|---|
| Company Contact: | false |
| First Name: | THAER |
| Middle Name: | T |
| Last Name: | ZAQZOUQ |
| Suffix: | |
| Title: | OWNER |
| Email: | tito4844@yahoo.com |
| Telephone Number: | US ( 215 ) 917-9511 |

Q: Company Contact Address
A:
| | |
|---|---|
| Country: | United States |
| Street Address/Route Number Line 1: | 2821 MAGEE AVE |
| City: | PHILADELPHIA |
| State/Province: | PENNSYLVANIA |
| Postal Code: | 19149-2529 |



# TOWING VEHICLE DRIVER IDENTIFICATION FORM

Commercial Activity License Number: _____

Name of License Holder: _____

Tow Business Name: L & S Towing & Recovery

Tow Business Location: 2660 N 2nd St Philadelphia, PA 19133

Tow Business Phone Number: 267-770-8632 / 215-917-9611

## DRIVER INFORMATION

| Name | Birth Date | Address 1 (Street No., Name, Ext.) | Address 2 (City, State, Zip) | PA Driver's License No. | License Class |
|---|---|---|---|---|---|
| Thaer Zayrouk | 2/19/1988 | 9239 Annapoli Rd | Phila, PA 19114 | 28570617 | C |
| Louay Shaman | 10-3-1982 | 1910 N Mascher St Phila, PA 19122 | Phila, PA 19122 | 30090077 | C |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

L_048_F                                                                 September

Arianna Delgado                                             August 16, 2023
1910 N. Mascher Street
Philadelphia, PA, 19122


I am Arianna Delgado; I am Louay Shaman's fiancé and the mother of his child. I have known Louay for three years and in the period of those years we had a beautiful daughter, Laila , who Louay has been a great father towards. He has always been a reliable father and partner who's been coming home to his family at night. Which is why it pains me to write this letter.

Until recently around March or April of this year, I had noticed a change that Louay was not coming home earlier as he would normally would. I then discovered that he was going home to another woman who had three kids and had his family at home wondering where he was at. It really hurt me when I found out the truth and I am still very angry with him because he chose to be untrue to me. He betrayed me and broke our trust.

Ever since he met this women Bailey Shields there were nothing but more problems and lies. Before all of this, he was providing for and taking care of his family. When his probation officer will do his check-ins, there were no issues with him and everything seemed to be going well. He had truly shown me how hard he was working and started up his towing company with his friend, I never met someone like him with the charisma he showed and always there when he was needed without any questions asked.

For a person with such great character and whom has been a supporting spouse and partner, I am still shocked, disappointed and angry at him for his dishonesty. Despite my feelings, I am asking the Court to give him a second chance in proving that he can be better not only for himself, but for his daughter. Having a dad present for your child is important to me because our daughter is our shared world. I truly hope this time away from his daughter and I has been a wake-up call for Louay to realize that he is a father and husband FIRST, and everything he does should reflect that. It makes me physically ill thinking about our daughter's lost time away from her dad and I know he feels the same way, and responsible for the hurt he caused us. As the school season approaches, I am asking the Court to give Louay leniency and the opportunity to be present with our family as our daughter starts the new school year. I can promise the Court that when he is living in our house, he will abide by MY Rules and those he legally must follow.

Thank you for your time.


                                                            Sincerely,

                                                            *Arianna Delgado*